PER CURIAM:
Claimant North Hill Coal Company brings this action for $408.78 for damages from a sewage back-up in the claimant’s rental property, allegedly the result of negligent sign installation on part of the respondent. The Court is of the opinion that the respondent was at fault, and accordingly, makes an award to the claimant as described below.
Claimant North Hill Coal Company (hereinafter referred to as North Hill) is the owner of an apartment building located at 529 Main Street, also designated as WV Route 211, in Mount Hope, Fayette County. In May 1996, the North Hill’s tenant discovered that sewage was backing up in the building. North Hill subsequently hired a plumber to run a sewer rooter, or “snake,” from inside the building toward the main city sewer line on Main Street. The plumber discovered a blockage where a metal sign post had been driven directly through the four-inch sewer feeder line *16 under the sidewalk approximately four feet from the building. The total cost for the plumber and the repairs was $408.78.
The issue to be decided by the Court is whether the City of Mount Hope or the respondent was responsible for installation of the signs in question. The evidence at hearing was that the metal sign post that was removed was approximately two feet long and that a longer sign post had been bolted on top of it upon which a “No Parking” sign would have been attached. North Hill operations manager John Gwinn Jr. testified that the post had been cut off at grade and had been covered over with concrete. He testified that he had no actual knowledge of who installed the signs in the first instance.
A letter from the Mount Hope city attorney to the respondent dated April 7, 1993, stated that the City had adopted new parking regulations for WV Route 211 and requested that the respondent erect the appropriate signs. Mount Hope Mayor Floyd Bonifacio testified at hearing that his store was located immediately next door to the claimant’s building and that he remembered seeing the installation of a number of “No Parking” signs. He testified that he knew all of the city employees who worked on road and sign maintenance and that he did not recognize any of the men who had actually installed the signs in question. A letter from Mr. Bonifacio to the respondent dated September 5, 1996, stated that the claimant’s sewage blockage occurred “where the State Highway Department had driven a sign post into their sewer line. . . ” Mr. Bonifacio testified that in his experience as mayor, the respondent would assume responsibility for installing signs on any State roads that lay within city limits.
Harry Honaker, District 9 sign shop supervisor for the respondent, testified that the signs were installed in November 1993. He testified that the Division of Highways relied upon information provided by the City of Mount Hope to determine where to install the signposts. Mr. Honaker said that city street manager instructed where the signs could be installed without causing damage and that the city also provided an air compressor to drill holes in the sidewalk. He stated that the actual installation of the short posts “was probably a joint effort. . . . (M)y crew was probably setting some and the city crew probably set some. He stated that his crew would then have installed the final signs. Thirty-two signs were installed; all sign posts and signs were provided by the respondent. Finally, Mr. Honaker testified that respondent’s daily work records indicate that two to three Division of Highways employees worked approximately six days in the process of installing these signs.
While the evidence as to who actually installed these signs is far from clear, the Court is of the opinion that the respondent played a substantial role in the sign work performed. WV Route 211 is a state road for which respondent is responsible for maintenance in a reasonably safe manner. While the City of Mount Hope may have had some part of the responsibility in the sign work performed, the Court cannot attribute a percentage of fault to the City as such apportionment would be speculation. The Court is of the opinion that the amount of work performed by the respondent’s crew is indicative of substantial involvement on the part of respondent.
Accordingly the Court is of the opinion to, and does, make an award in the amount of $408.78.
Award if $408.78.